UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) Cause No.: |
| v. | ) |
| | ) |
| JEREMY STEEN, ZACHARY TUNISON, | ) |
| BRIAN JOHNSON, ERIC BROTHERTON, | ) |
| and JOHN COTTLE (in his official capacity) | ) |
| | ) JURY TRIAL DEMANDED |
| | ) |
|    Defendants. | ) |
| Serve Defendants at: | ) |
| Lincoln County Sheriff's Department | ) |
| 65 Business Park Drive | ) |
| Troy, MO 63379 | |

## **COMPLAINT**

1. All tortious acts and events described herein occurred in Lincoln County, Missouri.

2. Jurisdiction is conferred upon this United States District Court by 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S. C. §§ 1981, 1983, and 1985(3).

3. At all times material to this action, Defendants were acting under color of State law.

4. At all times material to this action, Defendant Cottle served as the elected Sheriff of Lincoln County and was, as such, the chief executive officer of the Lincoln County Sheriff's Department.

**Factual Allegations, November 8-9, 2016**

5. On November 8, 2016 Defendants Steen and Tunison, along with other sheriff's deputies, responded to a radio call advising that a citizen reported a domestic disturbance.

6. The concerned citizen called 911 because he had heard a woman cry for help.

7. The concerned citizen provided 911 with his name and phone number.

1

8. Information was communicated to the responding Defendants that a citizen had reported hearing a woman scream for help and then be muffled as if being choked.

9. Despite the above facts, Defendant Tunison would later claim that all witnesses "wished to remain anonymous."

10. Upon information and belief, neither Defendant Tunison nor any other officer spoke to "witnesses" on the night of November 8, 2016 and Defendant Tunison materially misrepresented his investigation in his written report.

11. Upon arrival, Defendants Steen and Tunison found Plaintiff's husband on scene at the storage unit.

12. Plaintiff's husband had a small cut on his arm that was bleeding.

13. The contents of the storage unit had been largely removed and lay about the area, needing to be packed onto their trailer or put back into the storage unit.

14. Plaintiff's husband informed responding Defendants that he had been arguing with his wife and that she had left the scene on foot and had gone to her mother's house, which was nearby.

15. Soon, numerous Lincoln Counties Deputies were at the storage unit.

16. One or more of the Lincoln County Sheriff's Deputies left the storage unit where Plaintiff's husband was and went to Plaintiff's mother's home to speak with Plaintiff.

17. Plaintiff informed the officers that she had been in an argument with her husband at the storage unit, that she was fine, and that she had not been choked.

18. Officers observed no physical injuries, bruises, or red marks on Plaintiff.

19. The officers then left Plaintiff's mother's house, presumably, to return to the storage unit.

20. A short time later, Plaintiff was informed that the police were still present at the storage shed.

21. Plaintiff's mother then drove Plaintiff back to the storage shed.

22. Upon Plaintiff's arrival, her husband was already in custody and in the back of a patrol car.

23. Plaintiff began asking why her husband was being arrested and asking the officers not to do so.

24. Defendants Steen and Tunison claimed that they had arrested Plaintiff's husband because of a "12-hour-rule," mandating that police officers arrest somebody if they receive two domestic calls involving the same people in a 12-hour period.

25. As a matter of law, Missouri's "twelve hour" statute neither authorized nor mandated the arrest of anyone under these circumstances.

26. As the officers insisted that they had to take someone to jail, Plaintiff observed her belongings strewn about the area and requested she be taken to jail and that her husband left to clean up the mess.

27. Defendant Steen became irate and smacked a drink out of Plaintiff's hand as he swiftly approached and grabbed her by the arm.

28. Defendant Steen forcibly spun Plaintiff around and applied handcuffs in an unnecessarily rough and painful manner.

29. Plaintiff attempted to advise Defendant Steen that his actions were extremely painful because she had suffered severe injuries in an ATV accident years earlier and because she suffered from early on-set osteoporosis.

30. Defendant Steen ignored Plaintiff and continued to pull Plaintiff by the arm unnecessarily in a rough and painful fashion, and then forcing Plaintiff to his police car.

31. Subsequently, Defendants would assert they arrested – or had the right to arrest - Plaintiff because they had "probable cause" to believe she had assaulted her husband.

32. At the time Defendant Steen grabbed Plaintiff, Defendants lacked probable cause, or even a colorable claim of probable cause, that Plaintiff had committed any crime whatsoever.

33. Defendant Tunison, the lead officer on the officer leading the investigation, admitted that he decided to arrest Plaintiff because he believed he had the right to do so and/or was obligated to make the arrest under the above described "12-hour rule."

34. Defendants were unaware whether the "12 hour rule" was a law or a Lincoln County Sheriff's Department policy.

35. Defendants were not aware of the circumstance where Missouri's "12 hour statute" mandates an arrest be made.

36. Subsequently, Defendant Tunison agreed that he was aware of no evidence that Plaintiff had assaulted her husband.

37. Defendants had no discretionary authority to arrest anyone merely because they received two domestic disturbance calls involving Plaintiff and her husband in a twelve-hour period.

38. Because defendants were not performing a discretionary task, they are not afforded official immunity.

39. At the Lincoln County Jail, Plaintiff was handcuffed to a bench for several hours waiting to be "booked."

40. After several hours, Plaintiff began to complain about the delay and her arrest to Defendant Eric Brotherton, who was working at the booking desk.

41. Defendant Brotherton became agitated with Plaintiff and yelled at her.

42. Defendant Brotherton attempted to uncuff Plaintiff from the bench and, presumably re-cuff her for transport.

43. As Defendant handled Plaintiff, he did so in an unnecessarily rough and painful manner.

44. When Plaintiff complained of the pain Defendant was causing Defendant Brotherton threw her to the concrete floor using a dangerous martial arts joint lock technique called "Kumara."

45. This attack resulted in significant pain, swelling, and injury to Plaintiff's arm.

46. Plaintiff's arm had swollen to approximately twice its normal size by the next morning, Nov. 9, due to the injury sustained from Defendant Brotherton's attack.

47. Corrections Officer David Alley then arrived to assist Defendant Brotherton in "controlling" Plaintiff.

48. While C.O. Alley held Plaintiff down, Defendant Brotherton unnecessarily tazed Plaintiff at least once.

49. Defendant Brotherton and C.O. Alley then forced Plaintiff into a restraint chair where she was left for hours.

50. After being removed from the restrain chair, Plaintiff was led toward the women's pod but was instead directed into a room.

51. There, Plaintiff was raped by multiple employees of the Lincoln County Sheriff's Department, John Doe I and John Doe II, before being taken to her cell.

52. The next morning, November 9, a female corrections officer noticed the severe

4

swelling and damage to Plaintiff's arm and arranged for Plaintiff to be taken to the hospital.

53. At the hospital, she was found to have no fractures.

54. She was then returned to the jail and discharged immediately.

55. Plaintiff was charged with resisting arrest based on claims made by Defendants Steen and Tunison, but with no other crime.

56. That charge was subsequently dismissed against Plaintiff.

## April 1-2, 2017

57. On the afternoon of April 1, 2017, Defendants Steen, Johnson, and Tunison responded to a call of a civil dispute involving a homeowner attempting to evict family that had been living in his home.

58. After arriving, officers made contact with the homeowner, Plaintiff's father.

59. Officers learned that the basis of the call was that there was a civil issue regarding whether Plaintiff and her husband had a legal right to stay in the home or not.

60. Officers are without authority to resolve such civil disputes and may only keep the peace.

61. While the officers were present, Plaintiff came to the door.

62. Defendant Steen began to question Plaintiff as she was in the doorway.

63. Defendant Steen requested her identification.

64. Plaintiff indicated it was inside the house and began to retrieve it when Detective Steen grabbed her and physically restrained her from entering her house.

65. Defendants lacked reasonable suspicion to detain Plaintiff for any purpose.

66. Defendant Steen pulled her away from the door to place her in handcuffs and his patrol car.

67. Plaintiff grabbed a hold of and wrapped herself around a porch support beam and screamed that she wouldn't go back to the jail where they had raped her "last time."

68. Defendant Johnson rushed to the porch to assist Defendant Steen in restraining Plaintiff and removing her from her porch.

5

69. Defendants Johnson and Steen used "body weight stabilization" to control, restrain, and forcibly remove Plaintiff.

70. As a result of their unprovoked attack, Plaintiff's head was slammed against the side of the home.

71. As a direct and proximate result of their unprovoked attack, Plaintiff suffered a black eye with accompanying bruising and swelling.

72. Plaintiff was again charged with misdemeanor resisting arrest, but with no other offense.

73. That charge was also subsequently dismissed against Plaintiff.

### Additional Facts

74. Neither arrest is recorded by dash cameras or other by other means because Lincoln County Deputies are not equipped with dash cams or any other recording device.

75. According to Defendant Steen, removing dash cameras from Lincoln County Sheriff's Department vehicles was one of the first things Defendant Cottle did when he became Sheriff.

76. Defendant Brotherton's attack on Plaintiff was recorded on video at the jail.

77. Defendants Brotherton, Steen, and Cottle, however, failed to preserve the video of the attack, in contravention of numerous Lincoln County Sheriff Department policies.

78. Defendants had no discretion to fail to preserve the video of the attack on Plaintiff.

79. Defendant Brotherton failed to properly report his use of excessive force to his superiors.

80. Defendant Brotherton was without discretionary authority to fail to properly report his use of excessive force in accordance with Lincoln County Sheriff's Department policies.

81. On the morning of November 9, 2016; Plaintiff was sent to the hospital for x-rays on her severely swollen arm suffered in Defendant Brotherton's attack.

82. No record of her transportation to the hospital exists in contravention of Lincoln County Sheriff's Department policy.

83. No nursing notes, vital signs, doctor's notes, orders, admission paperwork, discharge paperwork or other medical records exist about her November 9, 2016 visit to the hospital other than the report of the x-ray taken of her arm.

6

84. Lincoln County Sheriff's Department and Defendant John Cottle do not possess any photographic documentation of the injuries Plaintiff sustained on November 8, 2016 of either arm, numerous bruises and finger marks, or open wounds.

85. According to Defendant Steen, during the November 8, 2016 transport of Plaintiff from the storage shed to jail, Plaintiff accused him of touching her inappropriately during a pat-down search before placing her in the back of his vehicle.

86. Under the Prison Rape Elimination Act (PREA), Defendant Steen was required to report such an allegation to his superiors.

87. Defendant Steen did not have discretionary authority to decide whether or not to report such an accusation.

88. Rather, PREA standards required the accusation be reported and Defendant Steen failed to do so.

89. On April 1, 2017, Defendants Steen, Tunison, and Johnson all heard Plaintiff scream that "they" had raped her "last time" they arrested her.

90. Under the Prison Rape Elimination Act (PREA), Defendants were required to report such an allegation to their superiors.

91. Defendants did not have discretionary authority to decide whether or not to report such an accusation.

92. Rather, PREA standards required the accusation be reported and Defendants failed to do so.

93. Lincoln County Sheriff's Department failed to photographically document the black eye Plaintiff suffered as a result of her April 1, 2017 interaction with Defendants.

94. Lincoln County Sheriff's Department failed to preserve a videotaped interrogation of Plaintiff that occurred on April 2, 2017, in contravention of Lincoln County Sheriff Department policies.

**Count I, Violation of Fourth Amendment Right to be Free from Unreasonable Search and Seizure Under § 1983**
(Defendants Steen and Tunison in their individual capacity)

95. Plaintiff re-asserts the allegations of paragraphs 1-94 and incorporates them herein as though fully re-stated.

96. Defendants Steen and Tunison acted together in deciding to arrest and physically

7

restraining Plaintiff on November 8, 2016.

97. Defendants lacked probable cause or reasonable articulable suspicion that the Plaintiff had committed any crime on the night of November 8, 2016.

98. Defendants lacked legal authority to attempt to restrain Plaintiff's movements.

99. By restraining Plaintiff, Defendants Steen and Tunison violated Plaintiff's right to be free from unreasonable seizure by the government under the Fourth Amendment to the United States Constitution.

100. It was reasonably foreseeable that, while incarcerated in a county jail, Plaintiff could be injured, assaulted, and/or sexually assaulted.

101. As a direct and proximate result of the illegal seizure of her person, Plaintiff suffered the following damages:

    a. Loss of liberty
    b. Sexual assault
    c. Humiliation
    d. Physical pain
    e. Emotional distress
    f. Violation of her constitutional rights
    g. Attorney's fees
    h. Medical bills
    i. Numerous contusions and finger print bruising on her body
    j. Extreme swelling and pain in her left arm
    k. Lacerations/wounds

102. Defendants Steen and Tunison acted intentionally, willfully, with evil intentions, and/or with conscious disregard for the rights and safety of Plaintiff.

103. Defendants Steen and Tunison's conduct was outrageous.

### Count II, Excessive Force Actionable Under § 1983
(Defendant Brotherton, individual capacity)

104. Plaintiff re-asserts the allegations of paragraphs 1-103 and incorporates them herein as though fully re-stated.

105. Defendant Brotherton's decision to deploy his Taser X26 against Plaintiff was objectively unreasonable under the facts and circumstances confronting the Defendant.

106. Defendant Brotherton's decision to throw Plaintiff onto a concrete floor was objectively unreasonable under the facts and circumstances confronting the

Defendant.

107. Defendant Brotherton's decision to use a martial arts joint lock/break called "kumara" against Plaintiff was objectively unreasonable under the facts and circumstances confronting the Defendant.

108. No reasonable officer in Defendant Brotherton's situation would have believed it was necessary or reasonable to take any of the aforementioned actions to restrain Plaintiff, transport her to her jail cell, or for any other lawful purpose.

109. As a direct and proximate result of the unlawful and excessive force used against Plaintiff while in Lincoln County jail on the night of November 8, 2016, Plaintiff sustained the following damages:

   a. Humiliation
   b. Physical pain
   c. Emotional distress
   d. Violation of her constitutional rights
   e. Medical bills
   f. Numerous contusions on her body
   g. Extreme swelling and pain in her left arm
   h. Lacerations/wounds

110. Defendant Brotherton acted intentionally, willfully, with evil intentions, and/or with conscious disregard for the rights and safety of Plaintiff.

111. Defendant Brotherton's conduct was outrageous.

**Count III, Excessive Force Actionable Under § 1983 (failure to prevent)**
(Defendant John Cottle in his official capacity)

112. Plaintiff re-asserts the allegations of paragraphs 1-111 and incorporates them herein as though fully re-stated.

113. Sheriff John Cottle has final policy making authority for the Lincoln County Sheriff's Department, including the Lincoln County Jail.

114. The policies of the Defendant John Cottle were not adequate to prevent violations of the law by his employees.

115. The Defendant John Cottle was deliberately indifferent to the substantial risk that Sheriff department policies and training were inadequate to prevent violations of law by its employees generally and specifically in regards to use of excessive and unnecessary force in the Lincoln County Jail.

116. The failure of the defendant John Cottle to prevent violations of law by his

employees caused the deprivation of the Plaintiff's rights by Defendant Brotherton.

117.    Defendant John Cottle's failure to prevent violations of law by his employees is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

118.    Specifically, Defendant John Cottle lacked sufficient policies and procedures to ensure it properly instructed and trained its jail employees in de-escalation strategies and the use of force against persons with little ability to pose a threat to officers such as Plaintiff.

119.    Specifically, Defendant John Cottle lacked sufficient policies and procedures to train its officers in the proper use of the X26 Taser or the appropriate use of dangerous martial arts maneuvers such as "Kumara" or banning such maneuvers use on inmates.

120.    Had Defendant John Cottle implemented sufficient policies and/or training, Defendant Brotherton would not have been working in the jail, or would have been properly trained not to unnecessarily use the X26 taser or dangerous martial arts maneuvers on a prisoner that posed no legitimate or reasonable threat to officer safety.

**Count IV, Unreasonable Seizure of Plaintiff Under § 1983 (failure to prevent)**
(Defendant John Cottle in his official capacity)

121.    Plaintiff re-asserts the allegations of paragraphs 1-120 and incorporates them herein as though fully re-stated.

122.    The Defendant John Cottle was deliberately indifferent to the substantial risk that Sheriff department policies and training were inadequate to prevent violations of law by its employees generally and specifically in regards to making arrests without probable cause, understanding what probable cause is to properly make such determinations, or properly understanding and enforcing Missouri's "12-hour" domestic disturbance statute.

123.    The failure of the defendant John Cottle to prevent violations of law by his employees caused the deprivation of the Plaintiff's rights by Defendants Steen and Tunison as described in Count I.

124.    Defendant John Cottle's failure to prevent violations of law by his employees is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

125.    Had Defendant John Cottle implemented sufficient policies and/or training, Defendants Steen and Tunison would not have arrested Plaintiff on the night of November 8, 2016

**Count V, Excessive Force Actionable Under § 1983 (failure to prevent)**
(Defendant John Cottle in his official capacity)

126. Plaintiff re-asserts the allegations of paragraphs 1-125 and incorporates them herein as though fully re-stated.

127. Sheriff John Cottle is the final decision maker of policies of the Lincoln County Sheriff's Department, including the Lincoln County Jail.

128. The policies of the Defendant John Cottle were not adequate to prevent violations of the law by its employees.

129. The Defendant John Cottle was deliberately indifferent to the substantial risk that Sheriff department policies and training were inadequate to prevent violations of law by its employees generally and specifically in regards to full PREA compliance, sexual assault prevention, and/or sexual harassment prevention, preservation of evidence, and reporting of sexual assault allegations in the Lincoln County Jail and in the Lincoln County Sheriff's Department generally.

130. The failure of the defendant John Cottle to prevent violations of law by his employees caused the deprivation of the Plaintiff's rights by John Doe I and John Doe II.

131. Defendant John Cottle's failure to prevent violations of law by his employees is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

132. Specifically, Defendant John Cottle lacked sufficient policies and procedures to ensure his employees were properly instructed and trained regarding PREA compliance, evidence tracking, evidence collection and retention, records control and retention, internal investigations, internal review of allegations of police misconduct, requirements that officers aware of such allegations report them to their superiors, abuse of power, reporting of misconduct by other officers/jail employees, sexual harassment and equality, and sexual assault.

133. Had Defendant John Cottle implemented sufficient policies and/or training, Plaintiff would not have been under the sole control and supervision of two male employees of Lincoln County; would not have been sexually assaulted; Plaintiff's multiple reports of being sexually assaulted by Lincoln County Deputies and employees would have been reported and investigated, the video recording of the attack on Plaintiff in the jail and its aftermath would exist; Defendant Brotherton's actions, claims, and report would have been reviewed promptly by the proper authorities allowing for proper investigation of the attack; Plaintiff would not have been sexually assaulted and/or would have the ability to bring her assailants to justice.

11

134. Defendant John Cottle's failure to prevent violations of law by his employees is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

135. As a direct and proximate result of the Defendant's failures, Plaintiff sustained the following damages:

    a. Humiliation
    b. Physical pain
    c. Emotional distress
    d. Violation of her constitutional rights
    e. Numerous contusions on her body
    f. Sexual assault
    g. Lost opportunity at justice.

**Count VI, Violation of Fourth Amendment Right to be Free from Unreasonable Search and Seizure Under § 1983**
(Defendants Steen and Johnson in their individual capacity)

136. Plaintiff re-asserts the allegations of paragraphs 1-135 and incorporates them herein as though fully re-stated.

137. Defendants Steen and Johnson acted together in deciding to arrest and physically restraining Plaintiff on April 1, 2017.

138. Defendants lacked probable cause or reasonable articulable suspicion that the Plaintiff had committed any crime on April 1, 2017.

139. Defendants lacked legal authority to attempt to restrain Plaintiff's movements.

140. By restraining Plaintiff, Defendants Steen and Johnson violated Plaintiff's right to be free from unreasonable seizure by the government under the Fourth Amendment to the United States Constitution.

141. As a direct and proximate result of the illegal seizure of her person, Plaintiff suffered the following damages:

    a. Loss of liberty
    b. Humiliation
    c. Physical pain
    d. Emotional distress
    e. Violation of her constitutional rights
    f. Attorney's fees
    g. A "black eye" with associated bruising and swelling

142. Defendants Steen and Tunison acted intentionally, willfully, with evil intentions,

12

and/or with conscious disregard for the rights and safety of Plaintiff.

143. Defendants Steen and Tunison's conduct was outrageous.

## Count VII, Excessive Force Actionable Under § 1983
(Defendants Steen and Johnson, individual capacity)

144. Plaintiff re-asserts the allegations of paragraphs 1-143 and incorporates them herein as though fully re-stated.

145. Defendants Steen and Johnson's decision to slam Plaintiff into the exterior of the residence was objectively unreasonable under the facts and circumstances confronting the Defendants.

146. No reasonable officer in Defendants' situation would have believed it was necessary or reasonable to take any of the aforementioned actions to restrain Plaintiff or for any other lawful purpose.

147. As a direct and proximate result of the unlawful and excessive force used against Plaintiff on April 1, 2017, Plaintiff sustained the following damages:

   a. Humiliation
   b. Physical pain
   c. Emotional distress
   d. Violation of her constitutional rights
   e. A "black eye" with associated bruising and swelling.

148. Defendants Steen and Johnson acted intentionally, willfully, with evil intentions, and/or with conscious disregard for the rights and safety of Plaintiff.

149. Defendants Steen and Johnson's conduct was outrageous.

WHEREFORE, Plaintiff prays for judgment against Defendants in a fair and reasonable amount, for court costs, attorney's fees pursuant to 42 U.S.C. § 1988 and for all other such orders as are fair and reasonable and for damages for aggravating circumstances or punitive damages in such sums that will serve to punish the Defendants appropriately and that will deter others from similar behavior.

## Count VIII, Negligence
(Defendants Steen and Tunison)

150. Plaintiff re-asserts the allegations of paragraphs 1-149 and incorporates them herein as though fully re-stated.

151. Defendants Steen and Tunison acted together in arresting Plaintiff pursuant to the "12 hour rule" on November 8, 2016.

13

152. Missouri's "12 hour rule" did not apply to the situations defendants were confronted with on November 8, 2016.

153. Defendants lacked discretionary authority to apply the "12 hour rule" to a situation not authorized by law.

154. Defendants are not entitled to official immunity from negligence claims for non-discretionary acts.

155. Defendants were negligent in their understanding and application of Missouri's "12 hour rule."

156. As a direct and proximate result of Defendant's negligence, Plaintiff was damaged.

157. Plaintiff suffered the following damages:

    a. Loss of Liberty
    b. Sexual assault
    c. Humiliation
    d. Physical pain
    e. Emotional distress
    f. Violation of her constitutional rights
    g. Medical bills
    h. Numerous contusions on her body
    i. Extreme swelling and pain in her left arm
    j. Lacerations/wounds

## Count IX, Negligence
(Defendant Steen)

158. Plaintiff re-asserts the allegations of paragraphs 1-157 and incorporates them herein as though fully re-stated.

159. According to Defendant Steen, Plaintiff accused him of inappropriate sexual conduct before she ever arrived at the Lincoln County Jail.

160. Under Lincoln County Sheriff's Department policy and pursuant to Federally mandated PREA standards, Defendant Steen was obligated to report the accusation promptly.

161. Defendant Steen did not report the accusation to anyone.

162. Defendant Steen lacked discretionary authority to choose whether or not he reported the Plaintiff's accusation.

163. Defendant Steen was required to report the accusation and failed to do so.

164. The requirement for prompt reporting of such allegations is specifically designed to prevent sexual assaults of any kind from happening in Jails and Prisons in the United States.

165. Had Defendant Steen followed PREA standards and Sheriff Department policy, Plaintiff would not have been sexually assaulted.

166. As a direct and proximate result of Defendant Steen's failure to follow PREA standards, Plaintiff suffered the following damages:

   a. Sexual assault
   b. Humiliation
   c. Physical pain
   d. Emotional distress
   e. Violation of her constitutional rights
   f. Medical bills
   g. Numerous contusions on her body
   h. Extreme swelling and pain in her left arm
   i. Lacerations/wounds

WHEREFORE, Plaintiff prays for judgment against Defendants in a fair and reasonable amount, for court costs, and for all other such orders as are fair and reasonable.

          /s/ John D. James
John D. James #61070
Attorney for Plaintiff
14 Richmond Center Court
St. Peters, Missouri 63376
(636) 397-2411 Fax: (636) 397-2799
e-mail: cjlaw@charliejames.com