**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:20-CV-00930-SRC |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| JEREMY STEEN, ZACHARY TUNISON, | ) | |
| BRIAN JOHNSON, ERIC BROTHERTON, | ) | |
| AND JOHN COTTLE (IN HIS OFFICIAL | ) | |
| CAPACITY), | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT AND SEPARATE ANSWER OF DEFENDANTS JEREMY STEEN, ZACHARY TUNISON, BRIAN JOHNSON, ERIC BROTHERTON, AND JOHN COTTLE, IN HIS OFFICIAL CAPACITY, TO PLAINTIFF'S COMPLAINT

Defendants Jeremy Steen, Zachary Tunison, Brian Johnson, Eric Brotherton, and John

Cottle, in his official capacity ("Defendants"), by and through counsel, for their Joint and

Separate Answer to Plaintiff's Complaint allege and state:

1.    All tortious acts and events described herein occurred in Lincoln County, Missouri.

**Defendants deny the allegations and legal conclusions in Paragraph 1.**

2.    Jurisdiction is conferred upon this United States District Court by 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S. C. §§ 1981, 1983, and 1985(3).

**Defendants deny the allegations and legal conclusions in Paragraph 2.**

3.    At all times material to this action, Defendants were acting under color of State law.

**Defendants deny the allegations and legal conclusions in Paragraph 3.**

4.    At all times material to this action, Defendant Cottle served as the elected Sheriff of Lincoln County and was, as such, the chief executive officer of the Lincoln County Sheriff's Department.

**Defendants admit that Defendant Cottle served as the elected Sheriff of Lincoln County, Missouri as alleged in Paragraph 4, but Defendants deny the remaining allegations and legal conclusions in Paragraph 4.**

### Factual Allegations, November 8-9, 2016

5.      On November 8, 2016 Defendants Steen and Tunison, along with other sheriff's deputies, responded to a radio call advising that a citizen reported a domestic disturbance.

**Defendants admit the allegations in Paragraph 5.**

6.      The concerned citizen called 911 because he had heard a woman cry for help.

**Defendants are without sufficient information or belief to admit or deny the allegations in Paragraph 6, and therefore, Defendants deny the allegations in Paragraph 6.**

7.      The concerned citizen provided 911 with his name and phone number.

**Defendants admit the allegations in Paragraph 7.**

8.      Information was communicated to the responding Defendants that a citizen had reported hearing a woman scream for help and then be muffled as if being choked.

**Defendants deny the allegations in Paragraph 8.**

9.      Despite the above facts, Defendant Tunison would later claim that all witnesses "wished to remain anonymous."

**Defendants deny the allegations as phrased in Paragraph 9.**

10.     Upon information and belief, neither Defendant Tunison nor any other officer spoke to "witnesses" on the night of November 8, 2016 and Defendant Tunison materially misrepresented his investigation in his written report.

**Defendants deny the allegations in Paragraph 10.**

11.     Upon arrival, Defendants Steen and Tunison found Plaintiff's husband on scene at the storage unit.

**Defendants admit the allegations in Paragraph 11.**

12.     Plaintiff's husband had a small cut on his arm that was bleeding.

**Defendants admit that the Plaintiff's husband had a cut on his arm that was bleeding as alleged in Paragraph 12, but Defendants deny the remaining allegations in Paragraph 12.**

13.     The contents of the storage unit had been largely removed and lay about the area, needing to be packed onto their trailer or put back into the storage unit.

**Defendants admit that the contents of the storage shed had been largely removed and lay about the area as alleged in Paragraph 13, but Defendants are without sufficient information or belief to admit or deny the remaining allegations in Paragraph 13, and therefore, the remaining allegations in Paragraph 13 are denied.**

14.     Plaintiff's husband informed responding Defendants that he had been arguing with his wife and that she had left the scene on foot and had gone to her mother's house, which was nearby.

**Defendants admit the allegations in Paragraph 14.**

15.     Soon, numerous Lincoln Counties Deputies were at the storage unit.

**Defendants deny the allegations as phrased in Paragraph 15.**

16.     One or more of the Lincoln County Sheriff's Deputies left the storage unit where Plaintiff's husband was and went to Plaintiff's mother's home to speak with Plaintiff.

**Defendants admit the allegations in Paragraph 16.**

17.     Plaintiff informed the officers that she had been in an argument with her husband at the storage unit, that she was fine, and that she had not been choked.

**Defendants admit the Plaintiff admitted that she had been in an argument with her husband at the storage unit as alleged in Paragraph 17, but Defendants deny the remaining allegations in Paragraph 17.**

18.     Officers observed no physical injuries, bruises, or red marks on Plaintiff.

**Defendants admit the allegations in Paragraph 18.**

19.     The officers then left Plaintiff's mother's house, presumably, to return to the storage unit.

**Defendants deny the allegations in Paragraph 19.**

20.     A short time later, Plaintiff was informed that the police were still present at the storage shed.

**Defendants are without sufficient information or belief to admit or deny the allegations in Paragraph 20, and therefore, Defendants deny the allegations in Paragraph 20.**

21.     Plaintiff's mother then drove Plaintiff back to the storage shed.

**Defendants are without sufficient information or belief to admit or deny the allegations in Paragraph 21, and therefore, the allegations in Paragraph 21 are denied.**

22.    Upon Plaintiff's arrival, her husband was already in custody and in the back of a patrol car.

**Defendants deny the allegations in Paragraph 22.**

23.    Plaintiff began asking why her husband was being arrested and asking the officers not to do so.

**Defendants deny the allegations in Paragraph 23.**

24.    Defendants Steen and Tunison claimed that they had arrested Plaintiff's husband because of a "12-hour-rule," mandating that police officers arrest somebody if they receive two domestic calls involving the same people in a 12-hour period.

**Defendants deny the allegations in Paragraph 24.**

25.    As a matter of law, Missouri's "twelve hour" statute neither authorized nor mandated the arrest of anyone under these circumstances.

**Defendants deny the allegations and legal conclusions in Paragraph 25.**

26.    As the officers insisted that they had to take someone to jail, Plaintiff observed her belongings strewn about the area and requested she be taken to jail and that her husband left to clean up the mess.

**Defendants deny the allegations in Paragraph 26.**

27.    Defendant Steen became irate and smacked a drink out of Plaintiff's hand as he swiftly approached and grabbed her by the arm.

**Defendants deny the allegations in Paragraph 27.**

28.    Defendant Steen forcibly spun Plaintiff around and applied handcuffs in an unnecessarily rough and painful manner.

**Defendants deny the allegations in Paragraph 28.**

29.    Plaintiff attempted to advise Defendant Steen that his actions were extremely painful because she had suffered severe injuries in an ATV accident years earlier and because she suffered from early on-set osteoporosis.

**Defendants deny the allegations in Paragraph 29.**

30.    Defendant Steen ignored Plaintiff and continued to pull Plaintiff by the arm unnecessarily in a rough and painful fashion, and then forcing Plaintiff to his police car.

**Defendants deny the allegations in Paragraph 30.**

31.     Subsequently, Defendants would assert they arrested – or had the right to arrest - Plaintiff because they had "probable cause" to believe she had assaulted her husband.

**Defendants deny the allegations and legal conclusions as phrased in Paragraph 31.**

32.     At the time Defendant Steen grabbed Plaintiff, Defendants lacked probable cause, or even a colorable claim of probable cause, that Plaintiff had committed any crime whatsoever.

**Defendants deny the allegations and legal conclusions in Paragraph 32.**

33.     Defendant Tunison, the lead officer on the officer leading the investigation, admitted that he decided to arrest Plaintiff because he believed he had the right to do so and/or was obligated to make the arrest under the above described "12-hour rule."

**Defendants deny the allegations and legal conclusions in Paragraph 33.**

34.     Defendants were unaware whether the "12 hour rule" was a law or a Lincoln County Sheriff's Department policy.

**Defendants deny the allegations and legal conclusions in Paragraph 34.**

35.     Defendants were not aware of the circumstance where Missouri's "12 hour statute" mandates an arrest be made.

**Defendants deny the allegations and legal conclusions in Paragraph 35.**

36.     Subsequently, Defendant Tunison agreed that he was aware of no evidence that Plaintiff had assaulted her husband.

**Defendants deny the allegations and legal conclusions in Paragraph 36.**

37.     Defendants had no discretionary authority to arrest anyone merely because they received two domestic disturbance calls involving Plaintiff and her husband in a twelve-hour period.

**Defendants deny the allegations and legal conclusions in Paragraph 37.**

38.     Because defendants were not performing a discretionary task, they are not afforded official immunity.

**Defendants deny the allegations and legal conclusions in Paragraph 38.**

39.     At the Lincoln County Jail, Plaintiff was handcuffed to a bench for several hours waiting to be "booked."

**Defendants deny the allegations in Paragraph 39.**

40.     After several hours, Plaintiff began to complain about the delay and her arrest to Defendant Eric Brotherton, who was working at the booking desk.

**Defendants deny the allegations in Paragraph 40.**

41.     Defendant Brotherton became agitated with Plaintiff and yelled at her.

**Defendants deny the allegations in Paragraph 41.**

42.     Defendant Brotherton attempted to uncuff Plaintiff from the bench and, presumably re-cuff her for transport.

**Defendants deny the allegations in Paragraph 42.**

43.     As Defendant handled Plaintiff, he did so in an unnecessarily rough and painful manner.

**Defendants deny the allegations in Paragraph 43.**

44.     When Plaintiff complained of the pain Defendant was causing Defendant Brotherton threw her to the concrete floor using a dangerous martial arts joint lock technique called "Kumara."

**Defendants deny the allegations in Paragraph 44.**

45.     This attack resulted in significant pain, swelling, and injury to Plaintiff's arm.

**Defendants deny the allegations in Paragraph 45.**

46.     Plaintiff's arm had swollen to approximately twice its normal size by the next morning, Nov. 9, due to the injury sustained from Defendant Brotherton's attack.

**Defendants deny the allegations in Paragraph 46.**

47.     Corrections Officer David Alley then arrived to assist Defendant Brotherton in "controlling" Plaintiff.

**Defendants deny the allegations as phrased in Paragraph 47.**

48.     While C.O. Alley held Plaintiff down, Defendant Brotherton unnecessarily tazed Plaintiff at least once.

**Defendants deny the allegations in Paragraph 48.**

49.     Defendant Brotherton and C.O. Alley then forced Plaintiff into a restraint chair where she was left for hours.

**Defendants deny the allegations in Paragraph 49.**

50.     After being removed from the restrain chair, Plaintiff was led toward the women's pod but was instead directed into a room.

**Defendants deny the allegations in Paragraph 50.**

51.    There, Plaintiff was raped by multiple employees of the Lincoln County Sheriff's Department, John Doe I and John Doe II, before being taken to her cell.

**Defendants deny the allegations in Paragraph 51.**

52.    The next morning, November 9, a female corrections officer noticed the severe swelling and damage to Plaintiff's arm and arranged for Plaintiff to be taken to the hospital.

**Defendants deny the allegations in Paragraph 52.**

53.    At the hospital, she was found to have no fractures.

**Defendants admit the allegations in Paragraph 53.**

54.    She was then returned to the jail and discharged immediately.

**Defendants admit that the Plaintiff was returned to the jail as alleged in Paragraph 54, but Defendants deny the remaining allegations in Paragraph 54.**

55.    Plaintiff was charged with resisting arrest based on claims made by Defendants Steen and Tunison, but with no other crime.

**Defendants are without sufficient information or belief to admit or deny the allegations in Paragraph 55, and therefore, the allegations in Paragraph 55 are denied.**

56.    That charge was subsequently dismissed against Plaintiff.

**Defendants are without sufficient information or belief to admit or deny the allegations in Paragraph 56, and therefore, the allegations in Paragraph 56 are denied.**

## April 1-2, 2017

57.    On the afternoon of April 1, 2017, Defendants Steen, Johnson, and Tunison responded to a call of a civil dispute involving a homeowner attempting to evict family that had been living in his home.

**Defendants deny the allegations as phrased in Paragraph 57.**

58.    After arriving, officers made contact with the homeowner, Plaintiff's father.

**Defendants admit the allegations in Paragraph 58.**

59.    Officers learned that the basis of the call was that there was a civil issue regarding whether Plaintiff and her husband had a legal right to stay in the home or not.

**Defendants deny the allegations and legal conclusions in Paragraph 59.**

60.    Officers are without authority to resolve such civil disputes and may only keep the peace.

**Defendants deny the allegations and legal conclusions in Paragraph 60.**

61.     While the officers were present, Plaintiff came to the door.

**Defendants deny the allegations in Paragraph 61.**

62.     Defendant Steen began to question Plaintiff as she was in the doorway.

**Defendants deny the allegations in Paragraph 62.**

63.     Defendant Steen requested her identification.

**Defendants admit the allegations in Paragraph 63.**

64.     Plaintiff indicated it was inside the house and began to retrieve it when Detective Steen grabbed her and physically restrained her from entering her house.

**Defendants deny the allegations in Paragraph 64.**

65.     Defendants lacked reasonable suspicion to detain Plaintiff for any purpose.

**Defendants deny the allegations and legal conclusions in Paragraph 65.**

66.     Defendant Steen pulled her away from the door to place her in handcuffs and his patrol car.

**Defendants deny the allegations in Paragraph 66.**

67.     Plaintiff grabbed a hold of and wrapped herself around a porch support beam and screamed that she wouldn't go back to the jail where they had raped her "last time."

**Defendants admit that the Plaintiff grabbed a hold of and wrapped herself around a porch support beam as alleged in Paragraph 67, but Defendants deny the remaining allegations in Paragraph 67.**

68.     Defendant Johnson rushed to the porch to assist Defendant Steen in restraining Plaintiff and removing her from her porch.

**Defendants deny the allegations in Paragraph 68.**

69.     Defendants Johnson and Steen used "body weight stabilization" to control, restrain, and forcibly remove Plaintiff.

**Defendants admit that Defendants Johnson and Steen used "body weight stabilization" to control the Plaintiff as alleged in Paragraph 69, but Defendants deny the remaining allegations in Paragraph 69.**

70.     As a result of their unprovoked attack, Plaintiff's head was slammed against the side of the home.

**Defendants deny the allegations in Paragraph 70.**

71.     As a direct and proximate result of their unprovoked attack, Plaintiff suffered a black eye with accompanying bruising and swelling.

**Defendants deny the allegations and legal conclusions in Paragraph 71.**

72.     Plaintiff was again charged with misdemeanor resisting arrest, but with no other offense.

**Defendants admit that Plaintiff was charged with misdemeanor resisting arrest as alleged in Paragraph 72, but Defendants deny the remaining allegations in Paragraph 72.**

73.     That charge was also subsequently dismissed against Plaintiff.

**Defendants are without sufficient information or belief to admit or deny the allegations in Paragraph 73, and therefore, the allegations in Paragraph 73 are denied.**

### Additional Facts

74.     Neither arrest is recorded by dash cameras or other by other means because Lincoln County Deputies are not equipped with dash cams or any other recording device.

**Defendants admit the allegations in Paragraph 74.**

75.     According to Defendant Steen, removing dash cameras from Lincoln County Sheriff's Department vehicles was one of the first things Defendant Cottle did when he became Sheriff.

**Defendants deny the allegations in Paragraph 75.**

76.     Defendant Brotherton's attack on Plaintiff was recorded on video at the jail.

**Defendants deny the allegations in Paragraph 76.**

77.     Defendants Brotherton, Steen, and Cottle, however, failed to preserve the video of the attack, in contravention of numerous Lincoln County Sheriff Department policies.

**Defendants deny the allegations in Paragraph 77.**

78.     Defendants had no discretion to fail to preserve the video of the attack on Plaintiff.

**Defendants deny the allegations and legal conclusions in Paragraph 78.**

79.     Defendant Brotherton failed to properly report his use of excessive force to his superiors.

**Defendants deny the allegations in Paragraph 79.**

80.     Defendant Brotherton was without discretionary authority to fail to properly report his use of excessive force in accordance with Lincoln County Sheriff's Department policies.

**Defendants deny the allegations and legal conclusions in Paragraph 80.**

81.     On the morning of November 9, 2016; Plaintiff was sent to the hospital for x-rays on her severely swollen arm suffered in Defendant Brotherton's attack.

**Defendants admit that Plaintiff was sent to the hospital for x-rays on November 9, 2016 as alleged in Paragraph 81, but Defendants deny the remaining allegations in Paragraph 81.**

82.     No record of her transportation to the hospital exists in contravention of Lincoln County Sheriff's Department policy.

**Defendants deny the allegations in Paragraph 82.**

83.     No nursing notes, vital signs, doctor's notes, orders, admission paperwork, discharge paperwork or other medical records exist about her November 9, 2016 visit to the hospital other than the report of the x-ray taken of her arm.

**Defendants deny the allegations as phrased in Paragraph 83.**

84.     Lincoln County Sheriff's Department and Defendant John Cottle do not possess any photographic documentation of the injuries Plaintiff sustained on November 8, 2016 of either arm, numerous bruises and finger marks, or open wounds.

**Defendants deny the allegations as phrased in Paragraph 84.**

85.     According to Defendant Steen, during the November 8, 2016 transport of Plaintiff from the storage shed to jail, Plaintiff accused him of touching her inappropriately during a pat-down search before placing her in the back of his vehicle.

**Defendants deny the allegations in Paragraph 85.**

86.     Under the Prison Rape Elimination Act (PREA), Defendant Steen was required to report such an allegation to his superiors.

**Defendants deny the allegations and legal conclusions in Paragraph 86.**

87.     Defendant Steen did not have discretionary authority to decide whether or not to report such an accusation.

**Defendants deny the allegations and legal conclusions in Paragraph 87.**

88.     Rather, PREA standards required the accusation be reported and Defendant Steen failed to do so.

**Defendants deny the allegations and legal conclusions in Paragraph 88.**

89.     On April 1, 2017, Defendants Steen, Tunison, and Johnson all heard Plaintiff scream that "they" had raped her "last time" they arrested her.

**Defendants deny the allegations in Paragraph 89.**

90.     Under the Prison Rape Elimination Act (PREA), Defendants were required to report such an allegation to their superiors.

**Defendants deny the allegations and legal conclusions in Paragraph 90.**

91.     Defendants did not have discretionary authority to decide whether or not to report such an accusation.

**Defendants deny the allegations and legal conclusions in Paragraph 91.**

92.     Rather, PREA standards required the accusation be reported and Defendants failed to do so.

**Defendants deny the allegations and legal conclusions in Paragraph 92.**

93.     Lincoln County Sheriff's Department failed to photographically document the black eye Plaintiff suffered as a result of her April 1, 2017 interaction with Defendants.

**Defendants deny the allegations in Paragraph 93.**

94.     Lincoln County Sheriff's Department failed to preserve a videotaped interrogation of Plaintiff that occurred on April 2, 2017, in contravention of Lincoln County Sheriff Department policies.

**Defendants deny the allegations in Paragraph 94.**

### Count I, Violation of Fourth Amendment Right to be Free from Unreasonable Search and Seizure Under § 1983

(Defendants Steen and Tunison in their individual capacity)

95.     Plaintiff re-asserts the allegations of paragraphs 1-94 and incorporates them herein as though fully re-stated.

**Defendants reallege and incorporate herein by reference their responses to Paragraphs 1 through 94 as though fully set forth herein in response to Paragraph 95.**

96.     Defendants Steen and Tunison acted together in deciding to arrest and physically restraining Plaintiff on November 8, 2016.

**Defendants deny the allegations in Paragraph 96.**

97.     Defendants lacked probable cause or reasonable articulable suspicion that the Plaintiff had committed any crime on the night of November 8, 2016.

**Defendants deny the allegations and legal conclusions in Paragraph 97.**

98.     Defendants lacked legal authority to attempt to restrain Plaintiff's movements.

**Defendants deny the allegations and legal conclusions in Paragraph 98.**

99.     By restraining Plaintiff, Defendants Steen and Tunison violated Plaintiff's right to be free from unreasonable seizure by the government under the Fourth Amendment to the United States Constitution.

**Defendants deny the allegations and legal conclusions in Paragraph 99.**

100.    It was reasonably foreseeable that, while incarcerated in a county jail, Plaintiff could be injured, assaulted, and/or sexually assaulted.

**Defendants deny the allegations and legal conclusions in Paragraph 100.**

101.    As a direct and proximate result of the illegal seizure of her person, Plaintiff suffered the following damages:

   a.     Loss of liberty

   b.     Sexual assault

   c.     Humiliation

   d.     Physical pain

   e.     Emotional distress

   f.     Violation of her constitutional rights

   g.     Attorney's fees

   h.     Medical bills

   i.     Numerous contusions and finger print bruising on her body

   j.     Extreme swelling and pain in her left arm

   k.     Lacerations/wounds

**Defendants deny the allegations and legal conclusions in Paragraph 101, including the allegations and legal conclusions in Paragraphs 101(a) through 101(k).**

102.    Defendants Steen and Tunison acted intentionally, willfully, with evil intentions, and/or with conscious disregard for the rights and safety of Plaintiff.

**Defendants deny the allegations and legal conclusions in Paragraph 102.**

103.    Defendants Steen and Tunison's conduct was outrageous.

**Defendants deny the allegations and legal conclusions in Paragraph 103.**

## Count II, Excessive Force Actionable Under § 1983

### (Defendant Brotherton, individual capacity)

104.   Plaintiff re-asserts the allegations of paragraphs 1-103 and incorporates them herein as though fully re-stated.

**Defendants reallege and incorporate by reference their responses to Paragraphs 1 through 103 as though fully set forth herein in response to Paragraph 104.**

105.   Defendant Brotherton's decision to deploy his Taser X26 against Plaintiff was objectively unreasonable under the facts and circumstances confronting the Defendant.

**Defendants deny the allegations and legal conclusions in Paragraph 105.**

106.   Defendant Brotherton's decision to throw Plaintiff onto a concrete floor was objectively unreasonable under the facts and circumstances confronting the Defendant.

**Defendants deny the allegations and legal conclusions in Paragraph 106.**

107.   Defendant Brotherton's decision to use a martial arts joint lock/break called "kumara" against Plaintiff was objectively unreasonable under the facts and circumstances confronting the Defendant.

**Defendants deny the allegations and legal conclusions in Paragraph 107.**

108.   No reasonable officer in Defendant Brotherton's situation would have believed it was necessary or reasonable to take any of the aforementioned actions to restrain Plaintiff, transport her to her jail cell, or for any other lawful purpose.

**Defendants deny the allegations and legal conclusions in Paragraph 108.**

109.   As a direct and proximate result of the unlawful and excessive force used against Plaintiff while in Lincoln County jail on the night of November 8, 2016, Plaintiff sustained the following damages:

    a.   Humiliation

    b.   Physical pain

    c.   Emotional distress

    d.   Violation of her constitutional rights

    e.   Medical bills

    f.   Numerous contusions on her body

    g.   Extreme swelling and pain in her left arm

    h.    Lacerations/wounds

**Defendants deny the allegations and legal conclusions in Paragraph 109, including the allegations and legal conclusions in Paragraphs 109(a) through 109(h).**

110.    Defendant Brotherton acted intentionally, willfully, with evil intentions, and/or with conscious disregard for the rights and safety of Plaintiff.

**Defendants deny the allegations and legal conclusions in Paragraph 110.**

111.    Defendant Brotherton's conduct was outrageous.

**Defendants deny the allegations and legal conclusions in Paragraph 111.**

### Count III, Excessive Force Actionable Under § 1983 (failure to prevent)

(Defendant John Cottle in his official capacity)

112.    Plaintiff re-asserts the allegations of paragraphs 1-111 and incorporates them herein as though fully re-stated.

**Defendants reallege and incorporate herein by reference their responses to Paragraphs 1 through 111 as though fully set forth herein in response to Paragraph 112.**

113.    Sheriff John Cottle has final policy making authority for the Lincoln County Sheriff's Department, including the Lincoln County Jail.

**Defendants deny the allegations and legal conclusions in Paragraph 113.**

114.    The policies of the Defendant John Cottle were not adequate to prevent violations of the law by his employees.

**Defendants deny the allegations and legal conclusions in Paragraph 114.**

115.    The Defendant John Cottle was deliberately indifferent to the substantial risk that Sheriff department policies and training were inadequate to prevent violations of law by its employees generally and specifically in regards to use of excessive and unnecessary force in the Lincoln County Jail.

**Defendants deny the allegations and legal conclusions in Paragraph 115.**

116.    The failure of the defendant John Cottle to prevent violations of law by his

employees caused the deprivation of the Plaintiff's rights by Defendant Brotherton.

**Defendants deny the allegations and legal conclusions in Paragraph 116.**

117.    Defendant John Cottle's failure to prevent violations of law by his employees is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

**Defendants deny the allegations and legal conclusions in Paragraph 117.**

118. Specifically, Defendant John Cottle lacked sufficient policies and procedures to ensure it properly instructed and trained its jail employees in de-escalation strategies and the use of force against persons with little ability to pose a threat to officers such as Plaintiff.

**Defendants deny the allegations and legal conclusions in Paragraph 118.**

119. Specifically, Defendant John Cottle lacked sufficient policies and procedures to train its officers in the proper use of the X26 Taser or the appropriate use of dangerous martial arts maneuvers such as "Kumara" or banning such maneuvers use on inmates.

**Defendants deny the allegations and legal conclusions in Paragraph 119.**

120. Had Defendant John Cottle implemented sufficient policies and/or training, Defendant Brotherton would not have been working in the jail, or would have been properly trained not to unnecessarily use the X26 taser or dangerous martial arts maneuvers on a prisoner that posed no legitimate or reasonable threat to officer safety.

**Defendants deny the allegations and legal conclusions in Paragraph 120.**

<u>**Count IV, Unreasonable Seizure of Plaintiff Under § 1983 (failure to prevent)**</u>

(Defendant John Cottle in his official capacity)

121. Plaintiff re-asserts the allegations of paragraphs 1-120 and incorporates them herein as though fully re-stated.

**Defendants reallege and incorporate herein by reference their responses to Paragraphs 1 through 120 as though fully set forth herein in response to Paragraph 121.**

122. The Defendant John Cottle was deliberately indifferent to the substantial risk that Sheriff department policies and training were inadequate to prevent violations of law by its employees generally and specifically in regards to making arrests without probable cause, understanding what probable cause is to properly make such determinations, or properly understanding and enforcing Missouri's "12-hour" domestic disturbance statute.

**Defendants deny the allegations and legal conclusions in Paragraph 122.**

123. The failure of the defendant John Cottle to prevent violations of law by his employees caused the deprivation of the Plaintiff's rights by Defendants Steen and Tunison as described in Count I.

**Defendants deny the allegations and legal conclusions in Paragraph 123.**

124.   Defendant John Cottle's failure to prevent violations of law by his employees is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

**Defendants deny the allegations and legal conclusions in Paragraph 124.**

125.   Had Defendant John Cottle implemented sufficient policies and/or training, Defendants Steen and Tunison would not have arrested Plaintiff on the night of November 8, 2016.

**Defendants deny the allegations and legal conclusions in Paragraph 125.**

### Count V, Excessive Force Actionable Under § 1983 (failure to prevent)

(Defendant John Cottle in his official capacity)

126.   Plaintiff re-asserts the allegations of paragraphs 1-125 and incorporates them herein as though fully re-stated.

**Defendants reallege and incorporate herein by reference their responses to Paragraphs 1 through 125 as though fully set forth herein in response to Paragraph 126.**

127.   Sheriff John Cottle is the final decision maker of policies of the Lincoln County Sheriff's Department, including the Lincoln County Jail.

**Defendants deny the allegations and legal conclusions in Paragraph 127.**

128.   The policies of the Defendant John Cottle were not adequate to prevent violations of the law by its employees.

**Defendants deny the allegations and legal conclusions in Paragraph 128.**

129.   The Defendant John Cottle was deliberately indifferent to the substantial risk that Sheriff department policies and training were inadequate to prevent violations of law by its employees generally and specifically in regards to full PREA compliance, sexual assault prevention, and/or sexual harassment prevention, preservation of evidence, and reporting of sexual assault allegations in the Lincoln County Jail and in the Lincoln County Sheriff's Department generally.

**Defendants deny the allegations and legal conclusions in Paragraph 129.**

130.   The failure of the defendant John Cottle to prevent violations of law by his employees caused the deprivation of the Plaintiff's rights by John Doe I and John Doe II.

**Defendants deny the allegations and legal conclusions in Paragraph 130.**

131.   Defendant John Cottle's failure to prevent violations of law by his employees is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

**Defendants deny the allegations and legal conclusions in Paragraph 131.**

132.   Specifically, Defendant John Cottle lacked sufficient policies and procedures to ensure his employees were properly instructed and trained regarding PREA compliance, evidence tracking, evidence collection and retention, records control and retention, internal investigations, internal review of allegations of police misconduct, requirements that officers aware of such allegations report them to their superiors, abuse of power, reporting of misconduct by other officers/jail employees, sexual harassment and equality, and sexual assault.

**Defendants deny the allegations and legal conclusions in Paragraph 132.**

133.   Had Defendant John Cottle implemented sufficient policies and/or training, Plaintiff would not have been under the sole control and supervision of two male employees of Lincoln County; would not have been sexually assaulted; Plaintiff's multiple reports of being sexually assaulted by Lincoln County Deputies and employees would have been reported and investigated, the video recording of the attack on Plaintiff in the jail and its aftermath would exist; Defendant Brotherton's actions, claims, and report would have been reviewed promptly by the proper authorities allowing for proper investigation of the attack; Plaintiff would not have been sexually assaulted and/or would have the ability to bring her assailants to justice.

**Defendants deny the allegations and legal conclusions in Paragraph 133.**

134.   Defendant John Cottle's failure to prevent violations of law by his employees is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

**Defendants deny the allegations and legal conclusions in Paragraph 134.**

135.   As a direct and proximate result of the Defendant's failures, Plaintiff sustained the following damages:

   a.   Humiliation

   b.   Physical pain

   c.   Emotional distress

   d.   Violation of her constitutional rights

   e.   Numerous contusions on her body

   f.   Sexual assault

g.      Lost opportunity at justice.

**Defendants deny the allegations and legal conclusions in Paragraph 135, including the allegations and legal conclusions in Paragraphs 135(a) through 135(g).**

## Count VI, Violation of Fourth Amendment Right to be Free from Unreasonable Search and Seizure Under § 1983

(Defendants Steen and Johnson in their individual capacity)

136.   Plaintiff re-asserts the allegations of paragraphs 1-135 and incorporates them herein as though fully re-stated.

**Defendants reallege and incorporate herein by reference their responses to Paragraphs 1 through 135 as though fully set forth herein in response to Paragraph 136.**

137.   Defendants Steen and Johnson acted together in deciding to arrest and physically restraining Plaintiff on April 1, 2017.

**Defendants deny the allegations and legal conclusions in Paragraph 137.**

138.   Defendants lacked probable cause or reasonable articulable suspicion that the Plaintiff had committed any crime on April 1, 2017.

**Defendants deny the allegations and legal conclusions in Paragraph 138.**

139.   Defendants lacked legal authority to attempt to restrain Plaintiff's movements.

**Defendants deny the allegations and legal conclusions in Paragraph 139.**

140.   By restraining Plaintiff, Defendants Steen and Johnson violated Plaintiff's right to be free from unreasonable seizure by the government under the Fourth Amendment to the United States Constitution.

**Defendants deny the allegations and legal conclusions in Paragraph 140.**

141.   As a direct and proximate result of the illegal seizure of her person, Plaintiff suffered the following damages:

a.      Loss of liberty

b.      Humiliation

c.      Physical pain

d.      Emotional distress

e.      Violation of her constitutional rights

f.      Attorney's fees

g.      A "black eye" with associated bruising and swelling

**Defendants deny the allegations and legal conclusions in Paragraph 141, including the allegations and legal conclusions in Paragraphs 141(a) through 141(g).**

142.    Defendants Steen and Tunison acted intentionally, willfully, with evil intentions, and/or with conscious disregard for the rights and safety of Plaintiff.

**Defendants deny the allegations and legal conclusions in Paragraph 142.**

143.    Defendants Steen and Tunison's conduct was outrageous.

**Defendants deny the allegations and legal conclusions in Paragraph 143.**

### Count VII, Excessive Force Actionable Under § 1983

(Defendants Steen and Johnson, individual capacity)

144.    Plaintiff re-asserts the allegations of paragraphs 1-143 and incorporates them herein as though fully re-stated.

**Defendants reallege and incorporate herein by reference their responses to Paragraphs 1 through 143 as though fully set forth herein in response to Paragraph 144.**

145.    Defendants Steen and Johnson's decision to slam Plaintiff into the exterior of the residence was objectively unreasonable under the facts and circumstances confronting the Defendants.

**Defendants deny the allegations and legal conclusions in Paragraph 145.**

146.    No reasonable officer in Defendants' situation would have believed it was necessary or reasonable to take any of the aforementioned actions to restrain Plaintiff or for any other lawful purpose.

**Defendants deny the allegations and legal conclusions in Paragraph 146.**

147.    As a direct and proximate result of the unlawful and excessive force used against Plaintiff on April 1, 2017, Plaintiff sustained the following damages:

    a.    Humiliation

    b.    Physical pain

    c.    Emotional distress

    d.    Violation of her constitutional rights

    e.    A "black eye" with associated bruising and swelling.

**Defendants deny the allegations and legal conclusions in Paragraph 147, including the allegations and legal conclusions in Paragraphs 147(a) through 147(e).**

148.   Defendants Steen and Johnson acted intentionally, willfully, with evil intentions, and/or with conscious disregard for the rights and safety of Plaintiff.

**Defendants deny the allegations and legal conclusions in Paragraph 148.**

149.   Defendants Steen and Johnson's conduct was outrageous.

**Defendants deny the allegations and legal conclusions in Paragraph 149.**

WHEREFORE, Plaintiff prays for judgment against Defendants in a fair and reasonable amount, for court costs, attorney's fees pursuant to 42 U.S.C. § 1988 and for all other such orders as are fair and reasonable and for damages for aggravating circumstances or punitive damages in such sums that will serve to punish the Defendants appropriately and that will deter others from similar behavior.

### Count VIII, Negligence

(Defendants Steen and Tunison)

150.   Plaintiff re-asserts the allegations of paragraphs 1-149 and incorporates them herein as though fully re-stated.

**Defendants reallege and incorporate herein by reference their responses to Paragraphs 1 through 149 as though fully set forth herein in response to Paragraph 150.**

151.   Defendants Steen and Tunison acted together in arresting Plaintiff pursuant to the "12 hour rule" on November 8, 2016.

**Defendants deny the allegations and legal conclusions in Paragraph 151.**

152.   Missouri's "12 hour rule" did not apply to the situations defendants were confronted with on November 8, 2016.

**Defendants deny the allegations and legal conclusions in Paragraph 152.**

153.   Defendants lacked discretionary authority to apply the "12 hour rule" to a situation not authorized by law.

**Defendants deny the allegations and legal conclusions in Paragraph 153.**

154.   Defendants are not entitled to official immunity from negligence claims for non-discretionary acts.

**Defendants deny the allegations and legal conclusions in Paragraph 154.**

155.   Defendants were negligent in their understanding and application of Missouri's "12 hour rule."

**Defendants deny the allegations and legal conclusions in Paragraph 155.**

156.   As a direct and proximate result of Defendant's negligence, Plaintiff was damaged.

**Defendants deny the allegations and legal conclusions in Paragraph 156.**

157.   Plaintiff suffered the following damages:

    a.   Loss of Liberty

    b.   Sexual assault

    c.   Humiliation

    d.   Physical pain

    e.   Emotional distress

    f.   Violation of her constitutional rights

    g.   Medical bills

    h.   Numerous contusions on her body

    i.   Extreme swelling and pain in her left arm

    j.   Lacerations/wounds

**Defendants deny the allegations and legal conclusions in Paragraph 157, including the allegations and legal conclusions in Paragraphs 157(a) through 157(j).**

## Count IX, Negligence

### (Defendant Steen)

158.   Plaintiff re-asserts the allegations of paragraphs 1-157 and incorporates them herein as though fully re-stated.

**Defendants reallege and incorporate herein by reference their responses to Paragraphs 1 through 157 as though fully set forth herein in response to Paragraph 158.**

159.   According to Defendant Steen, Plaintiff accused him of inappropriate sexual conduct before she ever arrived at the Lincoln County Jail.

**Defendants deny the allegations and legal conclusions in Paragraph 159.**

160.   Under Lincoln County Sheriff's Department policy and pursuant to Federally mandated PREA standards, Defendant Steen was obligated to report the accusation promptly.

**Defendants deny the allegations and legal conclusions in Paragraph 160.**

161.   Defendant Steen did not report the accusation to anyone.

**Defendants deny the allegations in Paragraph 161.**

162.     Defendant Steen lacked discretionary authority to choose whether or not he reported the Plaintiff's accusation.

**Defendants deny the allegations and legal conclusions in Paragraph 162.**

163.     Defendant Steen was required to report the accusation and failed to do so.

**Defendants deny the allegations and legal conclusions in Paragraph 163.**

164.     The requirement for prompt reporting of such allegations is specifically designed to prevent sexual assaults of any kind from happening in Jails and Prisons in the United States.

**Defendants deny the allegations and legal conclusions in Paragraph 164.**

165.     Had Defendant Steen followed PREA standards and Sheriff Department policy, Plaintiff would not have been sexually assaulted.

**Defendants deny the allegations and legal conclusions in Paragraph 165.**

166.     As a direct and proximate result of Defendant Steen's failure to follow PREA standards, Plaintiff suffered the following damages:

    a.     Sexual assault

    b.     Humiliation

    c.     Physical pain

    d.     Emotional distress

    e.     Violation of her constitutional rights

    f.     Medical bills

    g.     Numerous contusions on her body

    h.     Extreme swelling and pain in her left arm

    i.     Lacerations/wounds

**Defendants deny the allegations and legal conclusions in Paragraph 166, including the allegations and legal conclusions in Paragraph 166(a) through 166(i).**

167.     Defendants deny all other allegations, statements and declarations in Plaintiff's Complaint, including all allegations, statements, declarations and requests for relief in the prayer for relief, not specifically admitted herein.

## <u>AFFIRMATIVE AND OTHER DEFENSES</u>

168.     Without waiving the general denial herein, and subject to the other defenses asserted herein, Defendants state that Plaintiff's Complaint fails to state a claim upon which relief can be granted and should be dismissed.

169.     Without waiving the general denial herein, and subject to the other defenses asserted herein, Defendants state there was probable cause and legal justification to search and/or seize the Plaintiff on November 8, 2016, and for that reason, Plaintiff's Claim in Count I in Plaintiff's Complaint fails to state a claim upon which relief can be granted and should be dismissed.

170.     Without waiving the general denial herein, and subject to the other defenses asserted herein, Defendants state there was arguable probable cause and legal justification to search and/or seize the Plaintiff on November 8, 2016, and for that reason, Plaintiff's Claim in Count I in Plaintiff's Complaint fails to state a claim upon which relief can be granted and should be dismissed.

171.     Without waiving the general denial herein, and subject to the other defenses asserted herein, Defendants state there was probable cause and legal justification to search and/or seize the Plaintiff on April 1, 2017, and for that reason, Plaintiff's Claim in Count VI in Plaintiff's Complaint fails to state a claim upon which relief can be granted and should be dismissed.

172.     Without waiving the general denial herein, and subject to the other defenses asserted herein, Defendants state there was arguable probable cause and legal justification to search and/or seize the Plaintiff on April 1, 2017, and for that reason, Plaintiff's Claim in Count VI

in Plaintiff's Complaint fails to state a claim upon which relief can be granted and should be dismissed.

173.    Without waiving the general denial herein, and subject to the other defenses asserted herein, Defendants state that Plaintiff's constitutional claims against the individual Defendant officers Steen, Tunison, Brotherton and Johnson are barred by the doctrine of qualified immunity because their conduct relating to the Plaintiff was objectively reasonable, taken in good faith, and did not violate any clearly established rights of the Plaintiff.  Further, all of the alleged acts of the individual Defendant officers Steen, Tunison, Brotherton, and Johnson were justified, based upon reasonable suspicion, probable cause, arguable probable cause, did not deprive Plaintiff of her constitutional rights or due process rights, and were reasonable under the circumstances involving the Plaintiff giving the individual Defendant officers qualified immunity for all such acts.

174.    Without waiving the general denial herein, and subject to the other defenses asserted herein, Defendants state that Plaintiff's constitutional claims against Defendant John Cottle in his official capacity are barred by the doctrine of qualified immunity because his conduct relating to policies of the Lincoln County Sheriff's Department, training of deputies, use of force, use of tasers, PREA compliance, sexual assault prevention, sexual harassment prevention, preservation of evidence, reporting of sexual assault, and excessive force was objectively reasonable, taken in good faith, and did not violate any clearly established rights of the Plaintiff.  Further, all of the alleged acts of the individual Defendant John Cottle in his official capacity were justified, did not deprive Plaintiff of her constitutional rights or due process rights, and were reasonable under the circumstances relating to training of deputies and policies of the Lincoln County Sheriff's Department giving the Defendant John Cottle in his official capacity qualified immunity for all such acts.

175.    Without waiving the general denial herein, and subject to the other defenses asserted herein, Defendants state that if Plaintiff sustained any injuries or damages, which Defendants generally and specifically deny, then such injuries or damages arose out of, and were part of, discretionary acts or omissions involving the exercise of judgment and the Defendants are therefore immune to any liability or suit for any such alleged damages or injuries, which are general and specifically denied.

176.    Without waiving the general denial herein, and in no way limiting the denial or any defense asserted herein, Defendants state that any claim for punitive damages and/or for damages for aggravating circumstances in this case by the Plaintiff is in violation of the Defendants' right to due process and equal protection under the Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States and the same or similar guarantees in the Constitution of the State of Missouri including Article I, Sections 2, 10, 21 and 28 and all claims for punitive damages and/or damages for aggravating circumstances will amount to the imposition of a fine or penalty in violation of both Constitutions and should be dismissed.

177.    Without waiving the general denial herein, and subject to the other defenses asserted herein, Defendants state that if Plaintiff sustained any injuries or damages, which Defendants generally and specifically deny, then such injuries or damages were directly and proximately caused by the conduct, acts, and/or activity of the Plaintiff, and not any act of the Defendants.

178.    Without waiving the general denial herein, and subject to the other defenses asserted herein, Defendants state that all acts taken by the individual Defendant officers Steen, Tunison, Brotherton, and Johnson relating to the Plaintiff were justified, based

upon reasonable suspicion, probable cause, arguable probable cause, and were reasonable under the circumstances involving the Plaintiff.

179.    Without waiving the general denial herein, and subject to the other defenses asserted herein, Defendants state that each of them is entitled to reasonable attorney fees and costs incurred in defending this case pursuant to 42 U.S.C. §1988.

180.    Without waiving the general denial herein, and subject to the other defenses asserted herein, Defendants state that to the extent Plaintiff's constitutional claims under the United States Constitution against the Defendants pursuant to 42 U.S.C. §1983 and the U.S. Constitution are based upon vicarious liability and/or the doctrine of respondeat superior, that those claims fail to state a claim and should be dismissed.

181.    Without waiving the general denial herein, and subject to the other defenses asserted herein, Defendants state that Plaintiff's claims against the individual Defendant officers Steen and Tunison under Missouri law are barred by the official immunity doctrine in that all of their acts, if any, relating to the Plaintiff were discretionary in nature and performed by each of them in their capacity as law enforcement officers.

182.    Without waiving the general denial herein, and subject to the other defenses asserted herein, Defendants state that Plaintiff's claims against the individual Defendant officers Steen and Tunison under Missouri law are barred by the public duty doctrine in that all of their acts, if any, relating to the Plaintiff were taken in their capacity as law enforcement officers with their duties to enforce the law being owed by the individual officers to the general public and not to the Plaintiff.

183.    Without waiving the general denial herein, and subject to the other defenses asserted herein, Defendants state that Plaintiff's claims under Missouri law against each

of the individual Defendants Steen and Tunison in their official capacity are barred by sovereign immunity as codified in §537.600 RSMo. (2016) and under Missouri law.

184.    Without waiving the general denial herein, and subject to the other defenses asserted herein, Defendants state that any claim for punitive and/or aggravating circumstance damages against any of the individual Defendants in their official capacities is barred by federal law, §537.610 RSMo. (2016), and Missouri law.

185.    Defendants reserve the right to assert additional affirmative and other defenses if facts are learned through discovery to support additional affirmative and other defenses.

## JURY TRIAL DEMANDED

186.    Defendants demand a jury trial on all issues in Plaintiff's Complaint triable to a jury.

**WHEREFORE,** Defendants having fully answered Plaintiff's Complaint pray the Court to enter judgement in favor of each Defendant and against the Plaintiff, for their costs incurred herein, for their reasonable attorney fees incurred in defending this case pursuant to 42 U.S.C. §1988, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

PAULE, CAMAZINE & BLUMENTHAL, P.C.
*A Professional Corporation*

By:/s/ D. Keith Henson
D. Keith Henson, #31988
165 North Meramec Ave., Suite 110
Clayton (St. Louis), MO  63105
Telephone:  (314) 727-2266
Facsimile:   (314) 727-2101
khenson@pcblawfirm.com
Attorney for Defendants Jeremy Steen, Zachary Tunison, Brian Johnson, Eric Brotherton, and John Cottle, in his official capacity

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the attorney whose name appears above signed the original of this pleading and that true and correct copy of the foregoing was filed with the Clerk of the Court to be served by the operation of the Court's electronic filing system and that true and correct copy of the foregoing was sent via First Class U.S. Mail and E-Mail this 18th day of August, 2020 to:

John D. James, #61070
14 Richmond Center Court
St. Peters, MO 63376
(636) 397-2411
(636) 397-2799 - fax
cjlaw@charliejames.com
Attorneys for Plaintiff

/s/ D. Keith Henson